UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MIKKI BODDIE,

          Plaintiff,

   v.

SIGNATURE FLIGHT SUPPORT
CORPORATION, et al.,

          Defendants.

Case No. 19-cv-03044-DMR

**ORDER GRANTING MOTION FOR
APPROVAL OF REPRESENTATIVE
ACTION SETTLEMENT**

Re: Dkt. No. 55

On April 10, 2019, Plaintiff Mikki Boddie filed a class action complaint against Defendants Signature Flight Support LLC, formerly known as Signature Flight Support Corporation and Signature Aviation USA, formerly known as BBA Aviation USA, Inc. (together, "Signature" or "Defendants") alleging numerous wage and hour violations under California law and a representative claim for civil penalties under the California Private Attorneys General Act of 2004 ("PAGA"). Defendants removed the action to this court on June 3, 2019 under the Class Action Fairness Act. [Docket No. 1.] Plaintiff now seeks approval of the settlement of the representative claim for penalties under PAGA and requests an award of attorneys' fees. [Docket No. 55.] The court held a hearing on January 28, 2021 and ordered the parties to submit two rounds of supplemental materials and briefing, which the parties timely filed. [Docket Nos. 59 (Minute Order), 61 (Jt. Suppl. Briefing re Stipulated Settlement Agreement), 62-63, 67-68.] For the reasons stated below, the motion for approval is granted. Plaintiff's request for an award of attorneys' fees and costs is granted in part.

## I.    BACKGROUND

### A.    Facts and Claims

Defendants operate executive terminals for private airplanes. Plaintiff has worked at

Defendants' San Francisco facility as a Customer Service Agent since 2012. [Docket No. 55-1 (Matern Decl., Nov. 20, 2020) ¶¶ 4, 5.] Plaintiff sued Defendants alleging wage and hour violations under California law. [*See* Docket No. 14 (First Am. Compl., "FAC") ¶ 3.] She asserts the following claims in the FAC: 1) failure to provide required meal periods in violation of California Labor Code sections 226.7 and 512; 2) failure to provide required rest periods in violation of California Labor Code sections 226.7 and 512; 3) failure to pay overtime wages in violation of California Labor Code sections 510 and 1194; 4) failure to pay minimum wages in violation of California Labor Code sections 1194 and 1197; 5) failure to pay wages due upon termination in violation of California Labor Code sections 201, 202, and 203; 6) failure to maintain employment records in violation of California Labor Code section 226; 7) failure to provide accurate wage statements in violation of California Labor Code section 226; 8) failure to indemnify employees for necessary expenditures in violation of California Labor Code section 2802; 9) unlawful business practices in violation of California Business & Professions Code section 17200 et seq.; and 10) civil penalties under PAGA, California Labor Code sections 2698-2699.5.

The FAC alleges that Plaintiff seeks to represent a class of "all current and former non-exempt employees of Defendants in the State of California at any time within the period beginning four (4) years prior to the filing of this action and ending at the time this action settles or proceeds to final judgment[.]" FAC ¶ 5.

On January 31, 2019, Plaintiff gave written notice to California's Labor and Workforce Development Agency ("LWDA") of the specific provisions of the California Labor Code and IWC Wage Orders alleged to have been violated, in accordance with California Labor Code section 2699.3. *Id*. at ¶ 59.

### B. Procedural History

Plaintiff retained Matern Law Group ("MLG") in December 2018. Matern Decl. ¶ 6. Counsel engaged in pre-litigation investigation of the claims, including reviewing and analyzing information and documents furnished by Plaintiff. *Id*. at ¶ 9. Plaintiff filed the complaint in San Francisco Superior Court on April 10, 2019. Defendants removed the case to this court on June 3,

2019.  *Id.* at ¶¶ 7-8.  They subsequently moved to strike and/or modify Plaintiff's class allegations.
After Plaintiff filed the FAC on June 24, 2019, the court denied the motion to strike as moot.
[Docket Nos. 8, 14, 15.]  Defendants again moved to strike and/or modify the class allegations in
the FAC and the court denied the motion on August 5, 2019.  [Docket No. 21.]

Plaintiff propounded written discovery, including interrogatories and requests for
production of documents.  Defendants produced policy documents, a sampling of time and payroll
records, and other documents related to the putative class members' employment with Signature,
which MLG reviewed and analyzed.  Matern Decl. ¶ 10.  MLG also retained an expert statistician
to review and analyze the time and payroll records and prepare a damages model for use at the
mediation.  *Id.* at ¶ 11.

On April 6, 2020, the parties participated in a mediation before Steve Serratore, Esq.
Although the case did not settle on that date, the parties continued to engage in discussions and
settled the case a few days later.  *Id.* at ¶ 12.  The vast majority of the putative class members
(95.5%) signed arbitration agreements containing a class action waiver.  Therefore, the parties
agreed to settle the claims under PAGA that were or could have been pled in the FAC or
Plaintiff's written notice to the LWDA, along with Plaintiff's individual claims.  The parties
further agreed that Plaintiff would dismiss the putative class action claims (i.e., the non-PAGA
claims) without prejudice and would dismiss her individual claims with prejudice.  *Id.* at ¶ 15.

On May 7, 2020, the parties outlined the terms of the settlement in a Memorandum of
Understanding, subject to a long form agreement.  They executed a Stipulated Settlement
Agreement and Release of Claims on November 10, 2020 and submitted it to the LWDA the same
day.  *Id.* at ¶¶ 12, 41, Ex. 1 (Agreement), Ex. 2.

The parties moved for approval of the settlement.  The court held a hearing on January 28,
2021 and ordered the parties to submit supplemental materials and briefing in support of the
motion, including addressing the sufficiency of the settlement amount, which the parties timely
filed.  [Docket Nos. 59, 61, 62-63.]  Plaintiff's "analysis of the proposed settlement [was] entirely
cursory and [did] not sufficiently address why [the] monetary settlement amount" was reasonable.
Therefore, the court granted Plaintiff one final opportunity to brief the issue, and ordered Plaintiff

United States District Court
Northern District of California

to "submit a brief that addresses the sufficiency of the settlement amount given the maximum potential value of the PAGA claims, including comparing the settlement outcomes to those approved in similar cases by other courts." [Docket No. 64.] Plaintiff timely filed the ordered brief, to which Defendants filed a notice of non-opposition. [Docket Nos. 67 (Pl.'s 2d Supp. Br.), 68.]

## II. TERMS OF THE SETTLEMENT

The complete terms of the settlement agreement are set forth in the Stipulated Settlement Agreement and Release of Claims ("Agreement") and the February 11, 2021 Supplemental Amendment to Stipulated Settlement Agreement and Release of Claims ("Supplement"). [Docket No. 61 at ECF pp. 7-13.] The Agreement provides for a PAGA settlement class of "Aggrieved Employees" comprised of "all current and former hourly employees of Signature Flight Support LLC formerly known as Signature Flight Support Corporation, who were employed from January 31, 2018 to the date the Court approves this settlement, or June 13, 2020, whichever is earlier ('PAGA Period')." Agreement ¶ 2. Based on information provided by defense counsel, there are approximately 678 Aggrieved Employees. Jt. Suppl. Briefing 3.

### A. Settlement Amount

Under the terms of the Agreement, Signature will pay a Maximum Settlement Amount ("MSA") of $560,000 with no reversion. Agreement ¶ 11. This amount will be distributed among the Aggrieved Employees, the LWDA, the settlement administrator, and Plaintiff's counsel. *Id.* at ¶¶ 28, 29. The agreement provides that the following amounts will be subtracted from the MSA and that the remaining sum will be distributed to the LWDA and Aggrieved Employees:

- Settlement administration costs in an amount up to $5,000. Plaintiff's counsel states that the administrator's estimated costs are actually $4,250. Matern Decl. ¶ 42.
- Plaintiff's counsel's fees in an amount of up to one-third of the MSA, or $186,666.67, and litigation costs of up to $16,000. According to counsel, the total current and projected litigation costs is $15,323.90. Matern Decl. ¶ 40.

Agreement ¶ 28.

The sum that remains after deducting the administration costs and attorneys' fees and costs

from the MSA will be designated as the Net Settlement Amount ("NSA") and will be distributed to the LWDA and Aggrieved Employees. Agreement ¶¶ 12, 29. If the court approves the foregoing allocations, the Net Settlement Amount will be $353,759.43. Pursuant to California Labor Code section 2699(i), 75% of the NSA, or $265,319.57, will be paid to the LWDA. The remaining 25%, or $88,439.86, will be paid to the Aggrieved Employees on a pro rata basis using their respective number of pay periods worked during the PAGA Period. *Id*. at ¶ 29. On average, each Aggrieved Employee will receive a payment of $136.48 in PAGA penalties. Matern Decl. ¶ 15.

### B. Injunctive Relief

The Agreement provides for injunctive relief in the form of a modified rest break policy set forth in Signature's Team Member Handbook for hourly employees in California. The policy currently states:

> All Team Members are entitled to a ten-minute rest break for every four hours of work or major portion thereof. Your manager will schedule your meal and rest periods. Should the ambient temperature reach eighty-five (85) degrees, Team Members may request a five (5) minute cool down period for each sixty (60) minute period in which the ambient temperature is eighty-five (85) degrees. Should a Team Member be requested to forgo their meal, rest or cool down period, they will be compensated as required by California IWC Wage Orders.

Within 30 days following approval of the settlement, Signature agrees to modify the rest break policy and to distribute the policy to its employees. The modified policy is as follows, with additions and revisions in italics:

> All Team Members are entitled to a ten-minute *duty-free* rest break for every four hours of work or major *fraction* thereof, *which insofar as practicable shall be in the middle of each work period.* Your manager will schedule your meal and rest periods. *In addition*, should the ambient temperature reach eighty-five (85) degrees, Team Members may request a five (5) minute cool down period for each sixty (60) minute period in which the ambient temperature is eighty-five (85) degrees. Should a Team Member be requested to forgo their meal, rest or cool down period, they will be compensated as required by California IWC Wage Orders.

Agreement ¶ 31; Supplement ¶ 31. Therefore, the new policy clarifies that rest breaks must be duty-free and shall be in the middle of each work period where feasible, and that employees are

entitled to cool down periods in addition to rest breaks. In addition to distributing the new policy, Signature will post the policy "in a conspicuous location immediately below each time clock where the hourly employees in California clock in and out." *Id*.

### C. Settlement Administration

The parties propose that CPT Group, Inc. act as the settlement administrator. Under the Agreement, within ten business days after the effective date of the settlement, Defendants will provide the settlement administrator with information about the Aggrieved Employees, including their full names, last known mailing addresses, last known telephone numbers, last known email addresses if available, the sum total of their pay periods worked during the PAGA Period, and Social Security numbers. This information shall be subject to a mutually-agreeable protective order governing disclosure or dissemination of the information. Agreement ¶¶ 37, 38; Supplement ¶ 39. Upon receipt of this information, the settlement administrator will perform a search on the National Change of Address database to update the Aggrieved Employees' addresses. Within ten business days after receiving the Aggrieved Employees' information, the settlement administrator will provide the parties with a spreadsheet containing the individual settlement payments to each Aggrieved Employee and the data used to calculate the payments. The settlement administrator will obtain approval of the calculations from all counsel before mailing individual PAGA payments. Agreement ¶¶ 38, 39.

Within two business days of receiving such approval, the settlement administrator will email the Aggrieved Employees for whom Defendants provided email addresses a message inviting them to contact the settlement administrator to update their mailing addresses. Supplement ¶ 40. No later than two business days after the last day for the Aggrieved Employees to update their mailing addresses, the settlement administrator will mail the individual PAGA payments to all Aggrieved Employees via U.S. Mail, along with an agreed-upon "explanatory letter." Agreement ¶ 40, Ex. A. Each payment will be deemed penalties and reported using IRS Form 1099. *Id*. at ¶ 41.

The checks for the PAGA payments will remain negotiable for 180 days. Any checks returned as undeliverable on or before the 180-day deadline will be re-mailed to the Aggrieved

Employees at any forwarding address or address CPT is able to locate using a skip-trace or other search using the individuals' names, addresses, or Social Security numbers. Funds for checks returned as undeliverable or uncashed within 180 days will be tendered to the California State Controller—California Unclaimed Property Fund in the names of the Aggrieved Employees to whom the checks were issued. *Id*. at ¶¶ 43, 44.

### D. Released and Dismissed Claims

All Aggrieved Employees will release any and all "PAGA Released Claims" against Defendants that arose during the PAGA Period. Agreement ¶ 32. The Agreement defines "PAGA Released Claims" as "any and all claims under PAGA that are pled in Plaintiff's FAC in the Action, or which are pled in Plaintiff's written notice to the LWDA, or which could have been pled under the PAGA based on the factual allegations" in the FAC that arose during the PAGA Period, including "any allegations concerning unpaid wages arising from Defendants' use of improper rounding or grace period timekeeping policies." *Id*. at ¶ 15.

As part of the Agreement, Plaintiff agrees to dismiss her individual claims with prejudice, and to dismiss the putative class action claims without prejudice. Therefore, the only claims that will be released or barred are Plaintiff's individual claims and Plaintiff and the Aggrieved Employees' PAGA Released Claims. *Id*. at ¶ 36.[1] As noted, counsel states that the putative class action claims are being dismissed without prejudice "because the vast majority of Class Members, 902 out of 945 (95.5 percent), signed arbitration agreements containing a class action waiver." Matern Decl. ¶ 15.

## III. LEGAL STANDARD

PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 429, 435 (9th Cir. 2015) (quoting *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014)). "An employee bringing a PAGA action does so 'as

---

[1] Plaintiff has separately negotiated a settlement of her individual claims for $20,000 in exchange for dismissal of those claims with prejudice. Agreement ¶ 36, Matern Decl. ¶ 15.

United States District Court
Northern District of California

the proxy or agent of the state's labor law enforcement agencies,' who are the real parties in interest[.]" *Sakkab*, 803 F.3d at 435 (quoting *Iskanian*, 59 Cal. 4th at 380) (internal citations omitted); *see also id*. at 429 ("An action brought under the PAGA is a type of qui tam action." (citing *Iskanian*, 59 Cal. 4th at 382)). "[A]n action to recover civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009) (quotation marks and citation omitted). A judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id*.

"[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that 'court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA].'" *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017) (quoting Cal. Labor Code § 2699(*l*)(2)). Further, the LWDA must be afforded an opportunity to review a proposed PAGA settlement. *See* Cal. Labor Code § 2699(*l*)(2) ("The proposed [PAGA] settlement shall be submitted to the agency at the same time that it is submitted to the court."). Courts have the discretion to "award a lesser amount than the maximum civil penalty amount . . . if . . . to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Labor Code § 2699(e)(2). "There is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 . . . ." *Villalobos v. Calandri Sonrise Farm LP*, No. CV122615PSGJEMX, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015).

PAGA does not establish a clear standard for evaluating PAGA settlements, *see Ramirez*, 2017 WL 3670794, at *3, and "neither the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer as to what the appropriate standard is for approval of a PAGA settlement." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (quoting *Jordan v. NCI Grp., Inc.*, No. EDCV161701JVSSPX, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018)). In the absence of an express standard, several courts have evaluated proposed PAGA settlements under several of the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998),

which courts use to determine the fairness of a settlement under Rule 23(e). *See Ramirez*, 2017 WL 3670794, at *3; *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016); *Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019); *Rincon v. W. Coast Tomato Growers, LLC*, No. 13-CV-2473-JLS (KSC), 2018 WL 828104, at *2 (S.D. Cal. Feb. 12, 2018). Since "many of these factors bear on whether a settlement is fair," they are useful in evaluating PAGA settlements. *Rincon*, 2018 WL 828104, at *2.

The court finds the reasoning of these cases persuasive. Accordingly, it will evaluate the proposed settlement in light of the relevant *Hanlon* factors, as follows: 1) the strength of the plaintiff's case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the amount offered in settlement; 4) the extent of discovery completed and the stage of the proceedings; 5) the experience and views of counsel; and 6) the presence of government participation. *Hanlon*, 150 F.3d at 1026. The court will also evaluate the proposed settlement in light of PAGA's policy goals of "benefit[ing] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *See O'Connor*, 201 F. Supp. 3d at 1132-33 (noting that "the LWDA rightly has stressed that . . . the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public").

## IV. DISCUSSION

### A. Statutory Notice Requirements

In order to bring an action under PAGA, an aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab. Code § 2699.3(a)(1). If the LWDA does not provide a response within 65 calendar days of the postmark date of the notice provided by the aggrieved employee, the aggrieved employee may file a civil action. Cal. Lab. Code § 2699.3(a)(2)(A). Once an aggrieved employee files an action under PAGA, he or she must provide the LWDA with a copy of the complaint within ten days of filing. Cal. Lab. Code § 2699(*l*)(1).

As alleged in the FAC, Plaintiff gave the required statutory notice to the LWDA and

Defendants on January 31, 2019. FAC ¶ 59; Matern Decl. Ex. 2. Plaintiff then filed suit on April 10, 2019, which was 69 days after she provided notice. FAC ¶ 59. On April 15, 2019, five days after filing suit, Plaintiff provided a copy of the complaint to the LWDA, in accordance with section 2699(*l*)(1). Matern Decl. Ex. 2.

Plaintiff also submitted a copy of the Agreement to the LWDA on November 20, 2020, the same day it filed the present motion, in accordance with section 2699(*l*)(2), which provides that a "proposed settlement shall be submitted to the [LWDA] at the same time that it is submitted to the court." Accordingly, the court finds that Plaintiff has satisfied PAGA's notice requirements.

### B. *Hanlon* Factors

#### 1. Strength of Plaintiff's Case

This factor favors approval, as courts have noted that "legal uncertainties at the time of settlement" favor approval of a settlement. *See Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007). Counsel explains that proving the amount of penalties on a representative basis would be "expensive, time-consuming, and [an] uncertain proposition" which would substantially delay any recovery to the state and the Aggrieved Employees. Matern Decl. ¶ 18. In supplemental briefing, counsel explains that "substantial controversy exists as to each cause of action," and that he estimates Plaintiff's "chance of success on all claims to be about 50%." [Docket No. 62-1 (Stahle Decl., Feb. 11, 2021) ¶ 7.] *See, e.g., Patel*, 2019 WL 2029061, at *3 (noting that plaintiff "would be required to prove at trial each of the underlying Labor Code violations as to each of the . . . allegedly aggrieved employees in order to seek penalties under PAGA."); *Arias*, 46 Cal. 4th at 987 ("[r]ecovery of civil penalties under [PAGA] requires proof of a Labor Code violation."). Counsel also notes that even if the Aggrieved Employees prevailed on their claims, there is a risk that the court would reduce an award of PAGA penalties, since a court may reduce the penalty when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2). *See* Stahle Decl. ¶ 7 (noting that the court "has discretion to adjust downward any PAGA penalties established at trial, including based on Defendant's financial status").

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The parties reached a settlement early in the litigation, before complicated or extensive motion practice. Without a settlement, the parties would likely file a summary judgment motion and a motion for class certification, causing additional expense, delays, and uncertainty. Further litigation also carries a risk that the Aggrieved Employees could fail to establish their claims and receive no recovery. Stahle Decl. ¶ 6. As settlement provides a timely, certain recovery to the state and to the Aggrieved Employees in this case, this factor favors approval.

### 3. Amount Offered in Settlement

When considering whether the amount offered in settlement is fair and adequate, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The settlement provides for a total settlement amount of $560,000. After deductions, the PAGA penalties total $353,759.43. Matern Decl. ¶ 15. The total settlement amount represents 11% of the total exposure. *See* Matern Decl. ¶ 16; Stahle Decl. ¶ 5

As noted, the court ordered Plaintiff to submit two rounds of supplemental briefing addressing the sufficiency of the settlement amount in light of the maximum potential value of the PAGA claims, which is an estimated $4,969,791. Matern Decl. ¶ 16; Stahle Decl. ¶ 5. In her second supplemental brief, Plaintiff makes three arguments in favor of the reasonableness of the settlement amount. First, she argues that the "potential theoretical value" of the PAGA claim is not dispositive of the fairness of the settlement, because the settlement also provides injunctive relief that "promotes California's interest in enforcing" compliance with the Labor Code. 2d Supp. Br. 3. In this way, she argues, the proposed settlement is similar to the PAGA settlements approved by the courts in *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708 LHK, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017), and *Rodriguez v. RCO Reforesting, Inc.*, No. 2:16-cv-2523 WBS DMC, 2019 WL 331159 (E.D. Cal. Jan. 25, 2019). According to Plaintiff, "injunctive relief is an integral part of this Settlement." 2d Supp. Br. 3.

Plaintiff's comparison of the injunctive relief obtained in this case with the injunctive relief

at issue *Ramirez* and *Rodriguez* is not persuasive. In *Ramirez*, the injunctive relief included the defendants' agreement to 1) comply with all California wage and hour laws; 2) permit an audit of its payroll by the plaintiff's counsel to confirm compliance; 3) join a Farm Employer Association; 4) ensure employees are fully trained on preventing and responding to claims of sexual harassment; 5) conduct a meeting once per harvesting season on preventing sexual harassment and retaliation; and 6) establish a procedure for making complaints of sexual harassment, including providing workers with a phone number to contact the owner of the defendant farm directly. 2017 WL 3670794, at *2. The court described this injunctive relief, together with the defendant's payment of $27,5000 in PAGA penalties, as "a significant recovery" for the aggrieved employees. *Id.* at *5.

In *Rodriguez*, the defendants were permanently enjoined from violating the Fair Labor Standards act, the Migrant and Seasonal Agricultural Worker Protection Act, and California wage and hour laws and required to pay all wages, overtime, and business expenses. The injunctive relief also provided that the defendants would 1) provide lawful meal and rest breaks; 2) maintain proper payroll records; 3) pay for their employees' visa expenses and travel costs; 4) provide adequate water and sanitation for employees; and 5) not request or demand that any person pay back the money due under the judgment. 2019 WL 331159, at *2.

In comparison to *Ramirez* and *Rodriguez*, the injunctive relief to which the parties agreed in this case is minimal, at best. It consists of minor modifications to the rest break policy which simply reflect a statement of the law on rest breaks, and an agreement to post the same in visible places. The injunctive relief was so unremarkable that at the hearing neither counsel could recall the pertinent details in order to explain them to the court.

Plaintiff next argues that the settlement amount is reasonable because "the court has broad discretion to reduce the maximum recovery" of PAGA penalties and that it "would likely do so in this case." 2d Suppl. Br. 5. Plaintiff cites *Fleming v. Covidien, Inc*., No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011), and *Carrington v. Starbucks Corp*., 30 Cal. App. 5th 504, 528-29 (2018), in support. However, those cases, in which the courts significantly reduced the amount of PAGA penalties following bench trials, are distinguishable.

In *Fleming*, the court reduced the $2.8 million in possible penalties to $500,000 based on its findings that the employees "suffered no injury due to . . . erroneous wage statements" and made no complaints about the statements prior to filing suit, and the defendants were unaware "that the wage statements violated the law and took prompt steps to correct all violations once notified." 2011 WL 7563047, at *4. In *Carrington*, the plaintiff sought $70 million for meal period violations. The court awarded only $150,000 because it found that the defendant had made "good faith attempts" to comply with meal break violations and that the violations were "minimal." 30 Cal. App. 5th at 529.

According to Plaintiff, like the courts in *Fleming* and *Carrington*, this court would reduce the amount of PAGA penalties if Plaintiff were to prevail at trial because "Defendants have agreed to fix the violation and post a modified policy in the workplace." 2d Suppl. Br. 6. Not so. In this case, Defendants deny liability and deny that they committed any violations. While the courts in *Fleming* and *Carrington* took into account the defendants' willingness to promptly address wage and hour violations in deciding whether to reduce PAGA penalties, it is not clear how this factor could play out in this case, since the record is limited on the issues of the merits of the underlying claims and Defendants' actions with respect to the alleged violations.

Finally, Plaintiff argues that the proposed settlement "is in line with, and in certain respects better, than other federal court PAGA settlements." 2d Suppl. Br. 7. She cites *Abelar v. American Residential Services, LLC*, No. ED CV19-00726 JAK (JPRx), 2019 WL 6054607 (C.D. Cal. Nov. 14, 2019), in which the plaintiff brought "a wide range of" wage and hour claims but learned in settlement negotiations that most of the putative class members had arbitration agreements and waived certain rights to pursue claims through a class action. 2019 WL 6054607, at *1. The defendants' maximum exposure to liability on the PAGA claims was $9.1 million, and the parties settled the claims for $450,000, of which about $280,000 was divided between the LWDA and aggrieved employees. The total settlement amount represented about 4.9% of the total exposure. *Id.* at *2. The court approved the proposed settlement, finding it reasonable under Hanlon, Rule 23(e), and the public policy goals of PAGA. *Id.* at *4-5.

She also cites *Hartley v. On My Own, Inc.*, No. 2:17-cv-00353-KJM-EFB, 2020 WL

13

5017608 (E.D. Cal. Aug. 25, 2020).  In *Hartley*, the plaintiff brought claims based on the defendant's alleged failure to pay wages including overtime, provide meal and rest breaks, pay employees for required travel and mileage reimbursement, provide accurate itemized wage statements, and pay final wages.  She later added a claim for PAGA penalties.  2020 WL 5017608, at *1.  The court granted a motion to compel arbitration and dismissed all of the non-PAGA claims.  The parties agreed to a settlement of $575,000, with about $358,000 distributed between the LWDA and employees.  Given that the maximum possible penalty was about $10.3 million, the total settlement represented 5.7% of the defendant's exposure.  *Id*. at *2, 4.  The court approved the proposed settlement as "fair and reasonable."  *Id*. at *6.

This case is similar to and compares favorably with the settlements in *Abelar* and *Hartley*.  As in those cases, Plaintiff filed this as a class action only later to learn that nearly all putative class members had signed arbitration agreements with class action waivers.  Those putative class members can go forward with their individual claims in arbitration; this settlement only releases aggrieved employees' PAGA claims.  The proposed settlement amount is $560,000, representing 11% of the estimated total possible recovery.  The penalties portion of the settlement appears to be an adequate amount to further the goals of PAGA.  Additionally, the settlement provides for injunctive relief by which Defendants will modify their rest break policy for California employees and distribute and post the modified policy in the workplace.  Although the court does not find that the injunctive relief is "significant," the modified policy makes clear to employees that rest breaks must be duty-free and shall be in the middle of each work period where feasible, and that employees are entitled to cool down periods in addition to rest breaks.

As stated above, only the Aggrieved Employees' PAGA claims and Plaintiff's individual claims are being released.  Aggrieved Employees are free to pursue other non-released claims notwithstanding the settlement.  Based on all of the foregoing, the court finds that this factor favors approval, as the monetary and injunctive relief is "genuine and meaningful" and "consistent with the underlying purpose of the statute to benefit the public."  *See O'Connor*, 201 F. Supp. 3d at 1133.

### 4. Extent of Discovery Completed and Stage of the Proceedings

This factor favors approval. Plaintiff's counsel investigated the claims before filing suit, and the parties have completed discovery, including review and analysis of time and payroll records. Plaintiff's counsel also retained an expert statistician to prepare a damages model based on the time and payroll records. Therefore, the parties had a clear understanding of Defendants' potential liability and the risks of continued litigation.

### 5. Experience and Views of Counsel

This factor weighs in favor of approval, as the parties are represented by competent and experienced counsel. *See* Stahle Decl. ¶ 8. Plaintiff's counsel represents that he has extensive experience in employment litigation and wage and hour class, representative, and collective actions and has concentrated on employment litigation since 1997. Matern Decl. ¶¶ 23, 25.

### 6. Presence of a Government Participant

Plaintiff provided notice of the proposed settlement to the LWDA in accordance with PAGA requirements. The LWDA has not intervened or commented on the proposed settlement. Accordingly, this factor is neutral.

### 7. Conclusion

Five of the six factors discussed above favor approval; the sixth is neutral. The court concludes that the settlement is fair and reasonable, and that it promotes the goals of PAGA.

### C. Attorneys' Fees and Costs

As to the attorneys' fees and costs, PAGA provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Labor Code § 2699(g)(1). It does not set forth a specific standard for evaluating a request for attorneys' fees in connection with a PAGA settlement. Where, as here, the settlement of the action creates a common fund, "the district court has discretion . . . to choose either the percentage-of-the-fund or the lodestar method" to determine an award of attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Courts analyzing attorneys' fees in PAGA cases have used both methods. *Ramirez*, 2017 WL 3670794, at *6 (applying lodestar method); *Patel*, 2019 WL 2029061, at *4 (using both the lodestar and the percentage methods); *Rincon*, 2018 WL 828104, at

*5 (using both the lodestar and the percentage methods).  Regardless of which method is used, courts "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).

The percentage of the fund is the typical method of calculating class fund fees.  *See Vizcaino*, 290 F.3d at 1050 (noting "the primary basis of the fee award remains the percentage method").  The Ninth Circuit has established 25% of the common fund as the "benchmark" for attorneys' fees, with 20-30% as the usual range.  *Id.* at 1047.  However, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990).  Even when applying the percentage method, the court should use the lodestar method as a cross-check to determine the fairness of the fee award.  *Vizcaino,* 290 F.3d at 1050.  The court's selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case, including the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar cross-check.  *Vizcaino,* 290 F.3d at 1048-50.

Here, the parties agreed that Defendants would not oppose Plaintiff's request for attorneys' fees in the amount of up to one-third of the MSA, which is up to $186,666.67.  Agreement ¶ 28(a).  Plaintiff requests that sum for attorneys' fees.  Counsel's lodestar is $162,587.50.  Matern Decl. ¶ 29.  The requested fee award amounts to a 1.15 multiplier.  *Id.*

As noted, the benchmark for a reasonable fee award is 25%.  *In re Bluetooth*, 654 F.3d at 942.  A court may depart from this benchmark if it "provid[es] adequate explanation in the record of any 'special circumstances' justifying a departure."  *Id.*  Plaintiff does not discuss this authority, citing only cases from state court in which courts approved attorneys' fees of one-third of a PAGA settlement fund.  Mot. 12.  The court concludes that Plaintiff has not established that an upward departure from the 25% benchmark is warranted in this case.  Plaintiff describes no "special

circumstances" justifying such a departure. While class counsel conducted the case on a contingent fee basis and assumed all of the financial risk of litigation, counsel does not set forth any significant or unusual risks posed by the litigation. Moreover, based on the record before the court, it does not appear that the case was litigated particularly vigorously; counsel performed just under 200 hours of work total on the case. Accordingly, an award of 25% of the common fund is appropriate and warranted here. The court awards Plaintiff's attorneys' fees in the amount of $140,000. *See, e.g., Rincon*, 2018 WL 828104, at *5 (awarding attorneys' fees of up to $150,000, which amounted to 10-15% of the total settlement fund, where lodestar was over $450,000); *Delgado v. MarketSource, Inc.*, No. 17-cv-07370 LHK, 2019 WL 4059850, at * (N.D. Cal. Aug. 28, 2019) (awarding $20,700 in attorneys' fees, which was 25% of the settlement fund, where lodestar was $104,000).

As to costs, the Agreement provides that Plaintiff may be reimbursed for litigation costs up to $16,000. Agreement ¶ 12. Plaintiff's counsel states that the current costs total $14,363.90. Matern Decl. ¶ 40. He also projects future costs of $960.00 for "approval hearing expenses," including airfare, lodging, ground transportation, and parking. *Id*. As the court conducted the hearing on this matter by Zoom teleconference, travel expenses are not justified. The court finds that the remaining costs are justified and appropriate, and awards Plaintiff $14,363.00 in costs.

## I. CONCLUSION

For the foregoing reasons, Plaintiff's motion for approval of a representative action settlement is granted. Plaintiff's request for an award of attorneys' fees and costs is granted in part.

**IT IS SO ORDERED.**

Dated: June 28, 2021



Donna M. Ryu
United States Magistrate Judge